UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 12-60080-CR-SCOLA

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

HARVEY ZITRON,

        Defendant.
_____/

## ORDER DENYING MOTION TO SEVER COUNTS

Defendant Harvey Zitron moves to sever Counts 6-10 from Counts 1-5, arguing that Counts 6-10, which involve alleged access-device fraud and aggravated identity theft, are separate and distinct from Counts 1-5, which involve fraudulent tax returns. (DE 50.) For the reasons set forth below, the Court **DENIES** Harvey Zitron's Motion (DE 50).

### BACKGROUND

The tax-fraud counts are based on allegations that Zitron received undeclared income from checks from two companies that he controlled: Cyn-lex Corp. and Granite Industries. The Government alleges that these checks were written by a straw owner and payable to Zitron's friends, and that the money from the cashed checks was given to Zitron. Zitron failed to report that income when he filed his original Forms 1040 for tax years 2004 and 2005. Counts 1 and 2 of the Third Superseding Indictment are based on these two tax returns, which Zitron filed in April 2006. The Government alleges that in February 2008, Zitron filed fraudulent amended tax returns for tax years 2003, 2004, and 2005. Counts 3-5 relate to these allegedly fraudulent amended tax returns.

While investigating Zitron's alleged tax fraud, the Government discovered that Zitron had opened up one credit-card account in the name of his ex-wife, Robin Smith, and two credit-card accounts in the name of his son, Jordan Zitron (Jordan), that neither Jordan nor Smith had authorized Zitron to open these accounts, and that Zitron had charged purchases to these accounts. This conduct forms the basis of Counts 6-10, which charge Zitron with committing access-device

fraud and aggravated identity theft.

Before the Government included the access-device-fraud and aggravated-identify-theft charges in the Third Superseding Indictment, the Government expected Smith to testify that Zitron asked her to put his businesses in her name and that he asked her to put one of his condominiums in her name because he lost a lawsuit against Siemens Building Technologies. Similarly, before the Government added the access-device-fraud and aggravated-identify-theft charges, the Government expected Jordan to testify that Zitron incorporated two or three companies in Jordan's name, even though Jordan had no dealings with the companies; that Zitron signed Jordan's name on corporate documents; that Zitron also had his daughter sign documents relating to these companies, even though she had no dealings with these companies; and that Zitron had Jordan open a bank account for Zitron, a bank account that Jordan did not use and for which Jordan signed a stack of blank checks that Jordan left with Zitron. After including the access-device-fraud and aggravated-identify-theft charges, the Government expects that Smith and Jordan will testify that, among other things, they did not authorize Zitron to open these credit-card accounts nor charge money to them.

## ANALYSIS

Zitron contends that Counts 6-10 must be severed from Counts 1-5 primarily because failing to do so would deny Zitron his right to a fair trial. (DE 50 at 3-4.) Secondarily, Zitron argues that Counts 6-10 should not be joined with Counts 1-5 under Rule 8(a) of the Federal Rules of Criminal Procedure because the two sets of counts are not similar in character. (*Id.* at 2.)

Courts engage in a "two-step analysis to determine whether separate charges" can be properly tried together. *United States v. Walser*, 3 F.3d 380, 385 (11th Cir. 1993). The first step requires that the government demonstrate that initial joinder is proper under Rule 8(a). *Id.* Rule 8(a) "is construed broadly in favor of initial joinder." *Id.* Where, as here, the indictment itself does not explicitly state the connection between the charges, the government satisfies its burden under Rule 8(a) when its response to a Rule 8 motion proffers evidence showing that the charges are connected. *United States v. Dominguez*, 226 F.3d 1235, 1241 (11th Cir. 2000). But the government need not prove facts sufficient to sustain joinder; it instead must only allege in good faith those facts. *Id.* at 1241 n.8.

If the government shows that initial joinder was proper under Rule 8(a), courts then proceed to the second step: has the defendant shown that he or she will suffer compelling prejudice

that will lead to an unfair trial unless the counts are severed. *United States v. Slaughter*, 708 F.3d 1208, 1213 (11th Cir. 2013). "This is a heavy burden, and one which mere conclusory allegations cannot carry. Severance is not required when the possible prejudice may be cured by a cautionary instruction." *Id.* (internal citations and quotation marks omitted).

Turning to the first step, Rule 8(a) provides that an indictment "may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character." Because Counts 6-10 are similar in character to Counts 1-5, the Government has shown that these Counts were properly joined. All of the Counts involve allegations that Zitron used the names of others to facilitate his acts of fraud. During the tax years referred to in Counts 1-5, Zitron incorporated more than one company in Jordan's name and signed Jordan's name on corporate documents, all without Jordan's knowledge. Jordan was not even aware of the nature of these businesses. This is similar to Counts 6 and 8's allegations that Zitron opened two credit-card accounts in Jordan's name without his knowledge or authorization. Counts 7 and 9 involve the unauthorized use of these accounts to acquire goods and services totaling at least $1,000 in a particular year. So Counts 1-5 have a similar character to Counts 6-9. And since it is undisputed that Counts 6-10 are similar to each other, it logically follows that deciding that any of these Counts are properly included in the Third Superseding Indictment means that all of these Counts are properly included in that indictment.[1]

Zitron's arguments to the contrary are not persuasive. He argues that Counts 6-10 should not be joined with Counts 1-5 because the conduct charged in Counts 6-10 happened at different times from the conduct charged in Counts 1-5, and because the evidence required to prove Counts 1-5 will be different from the evidence required to prove Counts 6-10. But the "similarity of character of two offenses does not depend significantly upon their separation in time" or upon whether the evidence required to prove one offense overlaps with the evidence required to prove the other. *See United States v. Turner*, 93 F.3d 276, 283 (7th Cir. 1996). So "if offenses are of like class," they are properly joined even if they are "not connected temporally or evidentially." *Id.* (internal quotation marks omitted). In sum, Counts 6-10 were properly joined to Counts 1-5 under Rule 8(a).

That conclusion requires the Court to turn to the second step: namely, whether trying the

---

[1] Moreover, the credit-card account at issue in Count 10 is temporally connected to the conduct underlying Counts 1 and 2. That credit-card account was opened in April 2006, which is when Zitron filed the fraudulent tax returns in Counts 1 and 2.

Counts 6-10 together with Counts 1-5 will prejudice Zitron so greatly that he will not receive a fair trial. Zitron argues that this is the case because the "prejudicial spillover that is certain to result from the [G]overnment's allegations [in Counts 6-10] that Mr. Zitron willfully stole and assumed the identities of his son and ex-wife to their financial detriment" will prevent him from receiving a fair trial on the tax-fraud counts. (DE 50 at 2.) But, as the Government argues, Zitron offers no authority for the proposition that evidence showing that a defendant defrauded his ex-wife and son will prevent him from receiving a fair trial on other counts. That "heavy burden" cannot be sustained on bare assertions. *Slaughter*, 708 F.3d at 1213. And even before Counts 6-10 were added, the Government still planned on calling Smith and Jordan, who were expected to testify that Zitron used their names and identities in shady ways to avoid his legal obligations.[2] So the jury would already hear that Zitron was using his wife and son in highly suspect ways to facilitate possible criminal activity. The prejudice Zitron complains of was already essentially inherent in trying Counts 1-5 alone.

Moreover, even if there is some risk of additional prejudice by trying Counts 6-10 with Counts 1-6, that prejudice can be cured through appropriate instructions. For example, Basic Instruction No. 10.2 of the Eleventh Circuit Pattern Jury Instructions instructs the jury to consider each crime and the evidence relating to it separately: "[e]ach count of the indictment charges a separate crime. You must consider each crime and the evidence relating to it separately. If you find the Defendant guilty or not guilty of one crime, that must not affect your verdict for any other crime." And Basic Instruction 2.2 addresses the concern that a juror's potential feeling of ill-will towards Zitron for his defrauding his ex-wife and son will color that juror's view of whether Zitron committed tax fraud: "Your decision must be based only on the evidence presented during trial. You must not be influenced in any way by either sympathy for or prejudice against the Defendant or the Government." Though the Court very much doubts that the prejudice Zitron complains of is sufficient to deprive him of his right to a fair trial on the tax-fraud counts, even if it were, these

---

[2] Smith was expected to testify that Zitron asked her to put his businesses in her name and that he asked her to put one of his condominiums in her name because he lost a lawsuit against Siemens Building Technologies. Jordan was expected to testify that Zitron incorporated two or three companies in Jordan's name, even though Jordan had no dealings with the companies; that Zitron signed Jordan's name on corporate documents; that Zitron also had his daughter sign documents relating to these companies, even though she had no dealings with these companies; and that Zitron had Jordan open a bank account for Zitron, a bank account that Jordan did not use and for which Jordan signed a stack of blank checks that Jordan left with Zitron

instructions, if followed, would cure that prejudice. And a "jury is presumed to follow its instructions." *Weeks v. Angelone*, 528 U.S 225, 234 (2000). So trying Counts 6-10 together with Counts 1-5 will not deprive Zitron of a fair trial.[3]

## CONCLUSION

For the reasons set forth above, the Court **DENIES** Zitron's Motion to Sever (DE 50).

**DONE AND ORDERED** in Chambers at Miami, Florida, on July 1, 2013.

**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[3] The Government also argues that Zitron is not prejudiced by including Counts 6-10 because even if those Counts were severed, the Government would still be able to admit the evidence Zitron complains about under Rule 404(b) of the Federal Rules of Evidence. Rule 404(b) permits evidence of a defendant's bad acts to be introduced provided that that evidence is introduced not to show that the defendant has bad character and thus likely acted in conformity with that bad character during the events in question, but rather is introduced "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). Although it may be the case that the evidence underlying Counts 6-10 would be admissible under Rule 404(b) during a trial of only Counts 1-5, the Government does not articulate the permissible purpose under Rule 404(b) for which this evidence would be offered. (*See* DE 55 at 9-10.) It is not the Court's job to articulate a permissible purpose for the Government. The Court is thus not persuaded by the Government's Rule 404(b) argument.